UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> Plaintiff, <br> vs. <br> **KYLE ALLAN KENNARD,** <br> Defendant. | **2:21-CR-20747-TGB-KGA** <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 294)** |

Kyle Allan Kennard ("Defendant" or "Kennard") filed a Motion to Suppress evidence seized pursuant to a warrant to search the contents of an Instagram account called @WhoppDog ("the @WhoppDog account"). ECF No. 294, PageID.1313, PageID.1316. Kennard argues that the warrant application failed to present sufficient facts to establish probable cause that the @WhoppDog account would be likely to contain evidence of a crime. After carefully reviewing the affidavit in support of the search warrant, the Court concludes that the facts clearly established probable cause, so Defendant's Motion to Suppress must be **DENIED**.

## I. BACKGROUND

Defendant has been indicted in connection with a drug trafficking and money laundering conspiracy which allegedly operated in Detroit from February 2019 to December 2021. ECF No. 1, PageID.3-4, PageID.8-10.

1

According to the affidavit filed in support of the search warrant by Special Agent Brian W. Sams ("the Affiant"),[1] in 2021 a federal drug task force run by the United States Drug Enforcement Administration ("DEA") was investigating Kennard's alleged co-conspirator, Leo Todd, also known as "LWAY," for selling crystal meth. ECF No. 294-1, PageID.1345. A confidential source ("CS") had told DEA that Todd was operating a stash house at 17359 Griggs Street, in Detroit, Michigan. *Id*. The CS provided Todd's phone number as well as his Instagram handle, "tc_lway." *Id*. He also identified Leo Todd's State of Michigan Driver's License photo as the person he knows as "LWAY." Investigators following Todd's Instagram account saw that it changed its name to TEAMCOOKIE33 on February 28, 2021. *Id*. The CS had purchased narcotics from Todd at the 17359 Griggs address in 2020. The CS also reported that another person obtained an amount of heroin from that address in 2021. *Id*. at PageID.1336. The affidavit recounts that two search warrants were executed (where, the affidavit does not say) that resulted in the seizure of a firearm, packaging materials with heroin and fentanyl residue, scales, a kilo press, and "$50,000 in assets." *Id*. at PageID.1336.

As part of the investigation into this alleged conspiracy, DEA monitored Todd's publicly viewable "tc_lway" Instagram account during

---

[1] The copies of the instant search warrant affidavit contain significant portions that are redacted.

2020 and 2021. Photos showed Todd—apparently at the 17359 Griggs house—with stacks of currency, and in possession of a firearm, on May 19, 2020 and on November 18, 2020. *Id.* at PageID.1337-38. On January 28, 2021 and February 3, 2021, "tc_lway" posted pictures of pills that appear to be in plastic bags; and on January 29, 2021 posted another picture of a hand holding four thick stacks of what appears to be U.S. currency. *Id.* at PageID.1339-40. On February 7, 2021, a photo was posted showing Todd and another man, again apparently at the Griggs address, holding large amounts of cash. *Id.* at PageID.1341.

The affidavit recounts that on or around March 1, 2021, the government searched the residence at 17359 Griggs Street, in Detroit, Michigan. ECF No. 294-1, PageID.1343. Their search uncovered 32 suspected oxycodone pills, 58.5 grams of suspected cocaine, 31.3 grams of suspected heroin, drug processing equipment, and cash. *Id.* at PageID.1343-45. Just two days after the search, on March 3, 2021, agents conducting surveillance observed Kennard arriving at the 17359 Griggs address and entering the house. *Id.* at PageID.1346. He was later observed leaving the residence.

In April 2021, DEA obtained a search warrant for the digital content of Todd's Instagram account, whose name had by then changed from "tc_lway" to "TEAMCOOKIE33." *Id.* at PageID.1346-47.

That data revealed incriminating communications between the TEAMCOOKIE33 account and another Instagram account: @WhoppDog.

3

On December 17, 2020, @WhoppDog sent the TEAMCOOKIE33 account a photograph of piles of bags, each containing hundreds of pills which the government identified as prescription drugs, and a video of the bags of hundreds of pills. *Id.* at PageID.1348. On December 18, 2020, @WhoppDog messaged the TEAMCOOKIE33 account to say that someone named "Vicci" was on her way "to D," and that Vicci could "[c]ome to y'all 10am with y'all cheese[.]" *Id.* at PageID.1349-50.

On February 24, 2021, @WhoppDog sent the TEAMCOOKIE33 account a photograph of a brick-shaped object that the Affiant, based on his training and experience, believed to be a kilogram of cocaine. *Id.* at PageID.1351-53. @WhoppDog and the TEAMCOOKIE33 account then talked numbers: "36," "35.5," "give him 500 later." *Id.* The Affiant stated that he believed "36" referred to a price of $36,000 for a kilo of cocaine. *Id.*

On March 29, 2021, @WhoppDog and TEAMCOOKIE33 appeared to discuss pricing and distributing drugs: "we getting 40," "ok," "how many pills total," "50," "Ok Address and name." *Id.* at PageID.1353-54. TEAMCOOKIE33 remarked: "Don't go on that res." *Id.* at PageID.1354. The Affiant opined that this was a reference to a customer on an Indian reservation; the Affiant was aware from the investigation that Todd had drug trafficking ties to an Indian Reservation in North Dakota. *Id.*

The government also requested information from Instagram relating to @WhoppDog. On April 26, 2021, Instagram informed the

4

government that that account was active, and that it had been created in December 2012. *Id.* at PageID.1347.

In summarizing the content of the affidavit, S.A. Sams stated: "Detailed in this affidavit were communications from December 17, 2020 through March 29, 2021 between who I believe to be KENNARD and TODD sharing photos of bulk narcotics and the coordination of couriers and drug sales and purchases." *Id.* at PageID.1355.

S.A. Sams also averred that "information stored in connection with an Instagram account may provide crucial evidence of the 'who, what, why, when, where, and how' of the criminal conduct under investigation," drug trafficking. *Id.* at PageID.1355, PageID.1361. That evidence could include direct messaging logs, shared photos and videos, geographic locations, and time and dates of logins. *Id.* at PageID.1362. After stating these facts, the government applied for a warrant authorizing them to seize any information Instagram stored for the @WhoppDog account which constituted evidence of a conspiracy involving Kennard to distribute controlled substances. *Id.* at PageID.1368-69.

On July 21, 2021, United States Magistrate Judge Kimberly G. Altman issued a search warrant for the @WhoppDog account based on S.A. Sams' affidavit. ECF No. 294-1, PageID.1330. On December 14, 2021, Defendant was charged with conspiracy to distribute controlled substances and conspiracy to launder money. ECF No. 1, PageID.2, PageID.9. On October 30, 2024, Defendant filed his Motion to Suppress

5

evidence seized from @WhoppDog. ECF No. 294. The United States filed a Response on January 6, 2025. ECF No. 296. Defendant filed a Reply on January 20, 2025. ECF No. 297.

## II. ANALYSIS

Defendant argues that the affidavit for the search warrant did not establish probable cause to search his @WhoppDog Instagram account, in part because the affidavit did not sufficiently connect him to the account. And Defendant argues that the good faith exception to the exclusionary rule does not apply.

### A.   The Affidavit Established Probable Cause

"The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "There must . . . be a nexus between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 381 (*quoting United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A magistrate judge's determination of probable cause must receive "great deference" from district courts deciding motions to suppress. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024). "The issuing judge's decision should be left undisturbed if there was a 'substantial basis' for the probable cause finding." *United*

6

*States v. Tagg*, 866 F.3d 579, 586 (6th Cir. 2018) (*quoting Gates*, 462 U.S. at 238-29).

### i. The @WhoppDog Account Facilitated Drug Dealing

There is no reasonable debate that the affidavit created a fair probability that evidence of drug trafficking would be found on the @WhoppDog Instagram account. It presented Judge Altman with the fact that @WhoppDog was sending pictures of narcotics to another Instagram account connected with drug trafficking in Detroit. ECF No. 294-1, PageID.1347-54. It included facts that @WhoppDog was coordinating drug deals over Instagram. *Id.* at PageID.1349-54. It described how Kennard had showed up at the Griggs house in Detroit where drug trafficking was taking place. *Id.* at PageID.1346. And the Affidavit demonstrated that the Todd account and the @WhoppDog account were discussing the travel itineraries of a person travelling from Phoenix, Arizona to Detroit. *Id.* at PageID.1349-51. The facts created a fair probability that Instagram would likely possess other direct messages, files, and other information for the @WhoppDog account that could show the "who, what, why, when, where, and how" of the drug trafficking being investigated. *Id.* at PageID.1355, PageID.1361.

There must be a nexus between the place to be searched and the evidence of criminal activity sought in order to have probable cause to search a particular location. Here, the place to be searched is the @WhoppDog account. And if that account is being used to facilitate drug

7

trafficking through private messages, photos, and videos then it has a nexus or connection to the criminal activity being investigated. There is a reasonable probability that a search of such an account will reveal evidence of drug trafficking in the form of additional private messages, photos, and videos about the same activity. Here, that nexus was strongly established by the affidavit, and Judge Altman's finding of probable cause to search @WhoppDog was reasonable and justified.

Defendant's cases are not relevant. They involve situations where there was "no evidence of [the social media account] being used for any crimes being investigated." ECF No. 294, PageID.1324, *citing United States v. Propps*, No. 4:18-CR-00003, 2019 WL 668465, at *3 (N.D. Ga. Feb. 19, 2019); *United States v. Marroquin*, No. 6:19-CR-31-CHB-HAI-6, 2020 WL 7016990, at *4–5 (E.D. Ky. July 10, 2020), report and recommendation adopted, No. 619CR031CHBHAI6, 2020 WL 6336105 (E.D. Ky. Oct. 29, 2020). Here, the affidavit offered extensive evidence of the @WhoppDog account being used to communicate about the drug trafficking crimes that were being investigated. Defendant's other cited case, *United States v. Shipp*, 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019), *aff'd*, No. 21-1284-CR, 2022 WL 16543193 (2d Cir. Oct. 31, 2022), deals with warrant overbreadth, an issue that Defendant does not raise.

### ii. It Does Not Matter Who Owned The Account

Kennard also argues that the affidavit "failed to establish a nexus between [Kennard] and the narcotics trafficking/distribution that was

8

being investigated" relating to the TEAMCOOKIE33 Instagram account and the drug trafficking at 17359 Griggs Street. ECF No. 294, PageID.1327. Even if true, that is not relevant. The standard for probable cause is that "the affidavit supporting the search warrant must demonstrate a nexus between **the evidence sought** and **the place** to be searched," *Brown*, 828 F.3d at 382 (emphasis added), *not* between the evidence sought and a particular person who allegedly controls it. Here, a firm nexus linked evidence of drug trafficking with the @WhoppDog Instagram account, which is the place to be searched. Therefore, there was probable cause to search @WhoppDog. The warrant was properly issued.

The Defendant's Motion provides no authority to suggest that probable cause to search a social media account must include information establishing the identity of the account holder. Such evidence may be helpful in establishing probable cause, but it is not a prerequisite:

> There is no constitutional requirement that [a] warrant name the person who owns or occupies the described premises . . . . [the] specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized.

*United States v. Besase*, 521 F.2d 1306, 1308 (6th Cir. 1975).

The key question is whether the facts showed a fair probability that the contents of the account were likely to contain evidence of a crime.

9

Had the affidavit not mentioned Defendant's name, but presented the same facts about @WhoppDog being used for drug trafficking, the warrant would still be valid. *See id.* The @WhoppDog account was used to facilitate drug trafficking; it was likely to contain evidence of that activity. Consequently, the magistrate judge was correct in finding sufficient probable cause to search that "place."

### B. The Good Faith Rule Would Apply

In its Response, the government invoked the good faith exception as a way to salvage the admissibility of the evidence in the event that the Court were to find that the affidavit lacked probable cause. ECF No. 296, PageID.1392. Kennard, on the other hand, argued in his Reply that S.A. Sams' affidavit "was so bereft of incriminating information" that the good faith exception cannot apply. ECF No. 297, PageID.1446-47.

If a police officer relies on a defective search warrant in good faith, the exclusionary rule does not apply unless the affidavit is so lacking in indicia of probable cause that it would be unreasonable for any officer to rely on the warrant. "If the reviewing court is 'able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable."

10

*United States v. White,* 874 F.3d 490, 497 (6th Cir. 2017) (*quoting United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

Here, the good faith exception is not applicable, because, as discussed above, the affidavit presented ample facts establishing probable cause. But for the same reasons given above for the conclusion that the affidavit presented sufficient facts showing probable cause, a reasonable officer would have been justified in relying on the warrant. The affidavit established a strong connection between the criminal activity at issue—drug trafficking and money laundering—and the place to be searched, the @WhoppDog Instagram account. Based on the facts presented by the affidavit, that account was used extensively to facilitate drug trafficking with the use of private messages and photographs. Reliance on the affidavit was objectively reasonable, and the good faith exception to the exclusionary rule would apply.

### III. CONCLUSION

For the reasons set forth above and discussed herein, Defendant Kyle Allan Kennard's Motion to Suppress Evidence is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 27, 2025      /s/Terrence G. Berg
                             HON. TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE

11