UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:21-CR-20747-TGB-KGA** |
| Plaintiff, | |
| vs. | HON. TERRENCE G. BERG |
| **KYLE KENNARD,** | **OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE FROM SEARCH WARRANTS** |
| Defendant. | |
| | **(1) FOR CELL PHONE LOCATION INFORMATION (ECF NO. 376), AND** |
| | **(2) FOR DEFENDANT'S RESIDENCE (ECF NO. 377)** |

Defendant Kyle Kennard has been indicted on following counts: (1) Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, 21 U.S.C. §§ 846, 841 (a)(1); and (2) Conspiracy to Launder Monetary Instruments, 21 U.S.C. §§ 1956(a), 1956(h). ECF No. 1. Mr. Kennard has filed motions to suppress (ECF Nos. 376, 377) challenging two search warrants obtained during the investigation. Mr. Kennard also contends that the search warrant applications contain false statements of the kind that would entitle him to a hearing under *Franks*

1

*v. Delaware*, 438 U.S. 154 (1978), if he can make a preliminary showing that such false statements exist.

The Government filed briefs in opposition (ECF Nos. 388, 390) and Mr. Kennard has replied (ECF No. 393). The Court held a hearing on the motion on December 1, 2025. At the hearing, defense counsel indicated that Mr. Kennard would rely on the affidavits themselves to support his argument that he made a preliminary showing regarding the presence of false statements. Having carefully considered the briefs and the arguments made at the hearing, the Court will **DENY** the motions to suppress.

## I.  BACKGROUND

Mr. Kennard moves to suppress the results of two separate search warrants: one dated October 7, 2021, for "information about the location of the cellular telephone assigned call number (775) 508-6766" (the "6766 Phone"), ECF No. 376-2, PageID.2027; ECF No. 389, PageID.2228, and a second warrant dated February 1, 2022, for the residence at 100 Trowbridge Street, Detroit, MI, (the "Trowbridge Street residence") ECF No. 377-2, PageID.2087. Each of these search warrants and their supporting affidavits will be described in some detail below.

### A.    Search Warrant for Location of the 6766 Phone

On October 7, 2021, Judge Jonathan Grey granted an application for a search warrant. ECF No. 389, PageID.2228. The search warrant authorized the executing officer to seize "[a]ll information about the

2

location of the Target Cellular Device"—the 6766 Phone—"for a period of thirty days." *Id.* at PageID.2266. The search warrant was supported by a 36-page affidavit sworn to by Special Agent ("SA") Stacy Zirkle of the Drug Enforcement Administration (DEA). *Id.* at PageID.2264. In the affidavit, SA Zirkle attested to the following facts:

In January 2021, the Drug Enforcement Administration ("DEA") Detroit Office Task Force Group 2 ("TFG2") interviewed a Confidential Source ("CS"). *Id.* at PageID.2233.

During the January 2021 interview, the CS stated that a Black, male known as "LWAY" supplied crystal methamphetamine in Detroit, Michigan. *Id.* at PageID.2233–34. The CS stated that an acquaintance of theirs purchased one pound of crystal methamphetamine from LWAY at LWAY's "stash-house." *Id.* at PageID.2234. The CS later stated that LWAY's stash-house was located at "17[xxx] Griggs St, Detroit, Michigan" (the "Griggs Street residence"). *Id.* The CS stated that LWAY's Instagram account name or handle was "tc_lway" and that LWAY's first name was Leo. *Id.* The CS stated that they believed LWAY's source of supply for crystal methamphetamine was in Arizona. *Id.* After interviewers showed a State of Michigan Driver's License photograph of Leo Todd to the CS, the CS identified Leo Todd as LWAY. *Id.*

In a subsequent interview, the CS stated that they purchased prescription narcotics from LWAY in the summer of 2020. *Id.*

3

Specifically, the CS stated that they drove to the Griggs Street residence, that LWAY came from the residence, and sold pills to CS for cash. *Id.*

The CS also stated that on January 20, 2021, another unknown person has received a sample of heroin from the Griggs Street residence. *Id.*

Investigators later observed that the account tc_lway had changed its name to "TEAMCOOKIE33." *Id.*

On February 8, 2021, Ramika Boaze was stopped in the Detroit Metropolitan Airport by the Airport Special Investigations Unit. *Id.* at PageID.2259. She consented to the search of her baggage. *Id.* "The baggage contained approximately 129 grams of cocaine, 528 grams of methamphetamine, and 3,884 morphine pills." *Id.* Ms. Boaze "claimed that she was directed [by] 'Whopp Dogg' to deliver the bag to an address in Detroit." *Id.* The number of the person Ms. Boaze knew as "Whopp Dogg" was the 6766 Phone. *Id.* "Whopp Dogg" directed Boaze to deliver the bag to "1[xxxx] Woodward Avenue, Detroit, Michigan." *Id.* SA Zirkle highlights that this address is on the "same block that KENNARD lives" on. *Id.*

On March 1, 2021, Magistrate Judge Elizabeth A. Stafford authorized a search warrant for the Griggs Street residence. *Id.* at PageID.2235. During the execution of the search warrant, officers recovered drugs, drug processing paraphernalia, and substances suspected to be drugs. *Id.* at PageID.2236. The affidavit includes pictures

4

of a "drug processing table with multiple drug related items, drugs and drug proceeds." *Id.* at PageID.2236–37.

Subsequently, investigators monitored the Instagram account teamcookie33, believing it to be Mr. Todd's Instagram account. *Id.* at PageID.2238. Investigators observed that at 4:22 p.m. on March 1, 2021, after the execution of the search warrant for the Griggs Street residence, the teamcookie33 Instagram account posted a picture of an individual's shoulder. *Id.* That individual appears to be in uniform and the shoulder insignia displays the letters "DEA." *Id.* SA Zirkle stated that she "believe[d] this picture was taken from a Ring Home Surveillance camera, which was installed near the front entry-way of" the Griggs Street residence. *Id.* at PageID.2239. SA Zirkle also stated that the picture shows the uniform of a member of DEA-TFG2 and was taken as that group executed the Griggs Street residence. *Id.*

On May 3, 2021, the teamcookie33 Instagram account posted a picture of pills—later identified by law enforcement as Oxycodone pills—and a video of a residence—which law enforcement identified as the Griggs Street residence—featuring the same drug processing table observed during the March 1, 2021 execution of the search warrant. *Id.* at PageID.2240. A screenshot of the video shows drugs, drug processing paraphernalia, and a "semi-automatic handgun with an extended magazine" on top of the table. *Id.* at PageID.2241.

On March 3, 2021, investigators "observed electronic surveillance on [the Griggs Street residence] and observed a red Chrysler 300 bearing Illinois license plate BD3[xxxx] (PV Holdings rental vehicle, rented to Kyle KENNARD) arrive and park in the driveway of the residence." *Id.* Mr. Kennard was observed "exiting the driver side of the vehicle and enter[ing] … the residence via the front doorway." *Id.* Later, Mr. Kennard was observed leaving the Griggs Street residence. *Id.*

On April 15, 2021, Judge Stafford authorized a search warrant of the "TEAMCOOKIE33" Instagram account. *Id.* at PageID.2241–42. SA Zirkle appears to refer to the TEAMCOOKIE33 Instagram account interchangeably as "TEAMCOOKIES33," TEAMCOOKIE33, and lowercase versions of those names. *Id.* at PageID.2242. SA Zirkle indicated that the "TEAMCOOKIES33 account changes names frequently." *Id.*

On April 26, 2021, investigators received "subscriber information" about an Instagram account named "Whoppdog." *Id.* at PageID.2242. SA Zirkle periodically refers to this account as "Kennard's Instagram account." *See*, *e.g.*, *id.* at PageID.2244–46. The subscriber information of the Whoppdog Instagram account reflected following "Registered Email: adahir0426@gmail.com;                faithinnumbers@yahoo.com; lmilliontc@gmail.com;    2milliontc@gmail.com;    qboone33@gmail.com; bdrakejr@hotmail.com; almight567lll@gmail.com." *Id.* at PageID.2242.

6

"On June 25, 2021, investigators received" the information obtained as a result of the April 15, 2021 search warrant. *Id.* at PageID.2243. As relevant here, the teamcookie33 Instagram account had several interactions with the Whoppdog Instagram account:

- On December 17, 2020, Whoppdog sent TEAMCOOKIE33 a photograph and a video of multiple bags of pills. SA Zirkle attested that the pills are fentanyl pills.
- On December 18, 2020, from 10:12 a.m. to 10:16 a.m., Whoppdog sent TEAMCOOKIE33 several messages describing the travel plans of "Vicci" who was on her way to "D." Whoppdog wrote that "She can come back to Z on." Whoppdog then send a screenshot of flight information from "DTW" to "PHX." Whoppdog then wrote "Or she can go to ND tonight … Come to y'all 10am with y'all cheese."
- On December 18, 2020, at 11:41 a.m., Whoppdog sent a screenshot of flight information from PHX to MOT for a Victoria.

*Id.* at PageID.2244–46. SA Zirkle attested that fentanyl pills of the color and appearance of the pills in the photograph and video "are a frequently trafficked product from the Phoenix, Arizona." *Id.* at PageID.2246. SA Zirkle described that she believed that the

> conversation is related to a female courier named "Vicci" and that KENNARD is utilizing his Instagram account "Whoppdog" to coordinate her travel from Arizona to Detroit and possibly North Dakota defined in the conversation as "ND". As detailed, KENNARD utilized the Instagram account "Whoppdog" to send a potential flight for the person identified as "Vicci" then later sends the itinerary and booked flight for "Victoria to travel from Phoenix to North Dakota. I believe KENNARD was in Arizona at the time of the conversation because of the message of "She can come back to Z on" and the flight records. I believe the overall context of the conversation

is KENNARD showing TODD what they have and coordinating [Victoria's] travel as the courier for the pills shown in the video and photograph.

*Id.* at PageID.2246.

The affidavit attests to two further conversations, dated February 24, 2021 and March 29, 2021, between the Instagram account Whoppdog and teamcookie33. *Id.* at PageID.2246–49. As to the February 24, 2021 conversation, SA Zirkle attested that she "believe[d] the … photograph [sent by Whoppdog to teamcookie33] to be a kilogram of cocaine. *Id.* at PageID.2248. SA Zirkle attested that other parts of the conversation reflect a discussion of the price of the cocaine and that the conversation indicated the existence of more than one kilogram of cocaine. *Id.* As to the March 29, 2021 conversation, SA Zirkle attested that she believed that the conversation was a discussion of 50 pills being taken to a customer that was "on an Indian Reservation." *Id.* at PageID.2249.

On June 6, 2021, investigators monitored the Whoppdog Instagram Account. *Id.* at PageID.2242. On the account, investigators observed Whoppdog express "*** Team Cookies 4 Life.****." *Id.* SA Zirkle "believe[d] this is a reference to the criminal organization being operated by KENNARD and TODD as TODD's screenname itself is TEAMCOOKIE33." *Id.*

On September 27, 2021, investigators observed, via electronic surveillance, "a white Chevrolet Blazer to be parked in the driveway of 100 Trowbridge St, Detroit, Michigan." *Id.* at PageID.2249. SA Zirkle

stated that this is the "residence of KENNARD." *Id.* "At approximately 1:00pm, Investigators observed" a man "matching the same general physical description as Kyle KENNARD, exit the front entryway of 100 Trowbridge and enter into the white Chevrolet Blazer" and drive away. *Id.* at PageID.2250.

> At approximately 1:45 p.m.,
>
> [i]nvestigators observed, via pole-cam surveillance, a gray colored SUV arrive and park in front of [the Griggs Street residence]. Three Hispanic males, later identified as Cesar GARCIA (rear passenger-side seat), Marcos MONARREZ (rear driver-side seat), Ismael RODRIGUEZ (front passenger-side seat), and an unknown older white male (driver seat) exit the vehicle. GARCIA, MONARREZ, and RODRIGUEZ all obtained luggage/bags from the rear of the vehicle and entered into the front entryway of [the Griggs Street residence]. GARCIA transported dark-colored roller-suitcase into the residence, MONARREZ transported a dark-colored backpack and darkcolored fanny-pack (strapped around his chest) into the residence, and RODRIGUEZ transported a dark-colored backpack and red in color rollersuitcase into the residence. The gray colored SUV then departed from the area. Court-authorized GPS pings of a cellular device utilized by Leo TODD showed him to be within the radius of [the Griggs Street residence] at the time of this arrival (remaining at the residence until approximately 11:45pm.

*Id.* at PageID.2250–51. Subsequently, another Special Agent "contacted Delta Airlines, who confirmed that" Garcia, Monarrez, and Rodriguez had been on board a Delta flight from "PHX to DTW … arriving at DTW at approximately 12:43pm." *Id.* at PageID.2251.

At approximately 3:07 p.m., investigators observed, via electronic surveillance, "a white Chevrolet Blazer bearing Michigan license plate BQH712 (registered to Carrie Kennard … and matches vehicle observed at 100 Trowbridge …) arrive and park in front of [the Griggs Street residence.]" *Id.* Investigators observed a man, "matching the same general physical description as Kyle KENNARD, exit[] the driver seat of the vehicle and an unknown black male, wearing blue jeans and white tank-top, exit[] the front passenger seat of the vehicle." *Id.* Both men enter the Griggs Street residence. *Id.*

At approximately 3:20 p.m., investigators observed, via electronic surveillance, two different men enter the Griggs Street residence. *Id.* at PageID.2251–52. Each of them was carrying plastic bags which were "weighted down." *Id.* at PageID.2251–52. One of the plastic bags appears to be "weighted down with what appeared to be square-shaped item(s)." *Id.* at PageID.2252.

From approximately 4:01 p.m. to 5:49 p.m., investigators observed, via electronic surveillance, multiple individuals enter and leave the Griggs Street residence, or exchange money in the street in front of the Griggs Street residence. *Id.* at PageID.2252–53.

At approximately 6:05 p.m., investigators observed, via electronic surveillance, multiple "individuals standing near the front porch area of [the Griggs Street residence], including Leo TODD … and KENNARD … . KENNARD proceeds to enter into the driver seat of the white Chevrolet

10

Blazer parked in front of the residence and departs from the area." *Id.* at PageID.2254.

> SA Zirkle attests that in her
>
> training and experience, [she] believe[d] that KENNARD was at [the Griggs Street residence] to meet with GARCIA and other co-conspirators to discuss narcotics transactions and to oversee monetary transactions. KENNARD arrived shortly after GARCIA, MONARREZ, and RODRIGUEZ arrived. During the time that KENNARD and GARCIA were present at the location, several individuals came by the location and their stops were short in duration. Short stays are indicative of a person either conducting a narcotics transaction or dropping off money. Individuals who arrived were observed going into the location with a bag or backpack, as if to either pickup or drop off something.

*Id.*

From approximately 6:06 p.m. and 8:53 p.m., multiple "individuals … were observed loitering around the front yard/porch area of [the Griggs Street residence], with numerous additional individuals arriving/leaving in vehicles and on foot." *Id.* From 9:05 p.m. to 9:06 p.m., Rodriguez, Monarrez, and Garcia were observed on the front yard of the Griggs Street residence conversing with other individuals. *Id.* at PageID.2255.

At approximately 9:13 p.m., investigators observed, via electronic surveillance, Garcia, Monarrez, and Rodriguez walk to a white Toyota Prius—later revealed to be an Uber. *Id.* at PageID.2255–56. The three men were observed chatting with the driver of the vehicle. *Id.* at PageID.2255. Approximately a minute later, Monarrez and Rodriguez

hand cash to Garcia, "who proceeds to hand the cash to the driver of the vehicle through the front passenger side window." *Id.* Rodriguez and Garcia place their backpacks (including Monarrez's backpack) into the rear-hatch of the vehicle and enter the vehicle. *Id.* at PageID.2255–56. "The Toyota Prius then departs from the area traveling north on Griggs St. Investigators maintain constant surveillance on the vehicle." *Id.* at PageID.2256.

> Subsequently, TFG2 followed the Uber. *Id.*
>
> At approximately 9:57pm, Michigan State Police conducted a traffic stop of the Uber. During the stop a consent to search of the vehicle was conducted and located the backpacks in the rear hatch area. A search of the backpacks conducted by MSP Troopers located approximately 1.335 kilograms of blue pills wrapped in cellophane and $31,320 in US Currency in the light in color backpack that was observed on GARCIA's back when he departed [the Griggs Street residence].

*Id.* at PageID.2256–57. SA Zirkle attested that the pills are suspected of being fentanyl pills. *Id.* at PageID.2257.

Investigators subpoenaed toll records and subscriber information for the 6766 Phone. *Id.* Toll records indicated that between March 1, 2021 and September 12, 2021 the [6766 Phone] was … in contact with Leo TODD a total of 49 times." *Id.* at PageID.2257–58. Toll records also indicated that between March 16, 2021 through August 24, 2021, the 6766 Phone was in contact with Garcia a total of 112 times. *Id.* at PageID.2258. Additionally, toll records indicated that the 6766 Phone

12

was in contact with several other co-conspirators, including Perise Smith and Cordarella Campbell. *Id.* "TFG2 received the subscriber information for [the 6766 Phone] and observed the subscriber to be 'Cateasha IVY-Wells.'" *Id.*

SA Zirkle attests that she "know[s] through [her] training and experience that narcotics traffickers frequently use nominees and/or family members as subscribers to personal phone numbers as a way to attempt to thwart law enforcement efforts to assist in the identification of users of telephones numbers." *Id.* Additionally, SA Zirkle attests that she "knows … through tolls and subscriber information that IVY-Wells utilizes a phone number of 734-730-5890 and that number is in frequent contact with the [6766 Phone]." *Id.*

> Additionally, SA Zirkle attests that she is
>
> aware that on September 11, 2020, KENNARD filed a Police report with the Las Vegas Metro Police Department after his jacket was stolen. KENNARD claimed to have $10,000 cash in the jacket pocket. At that time, Kennard provided the [6766 Phone] as his contact number and is notated in the police report.

*Id.*

> SA Zirkle concluded the affidavit by stating that she
>
> believe[d] that-KENNARD is currently involved in drug trafficking and money laundering for several reasons, including the following: a) Source information identifying KENNARD as a drug trafficker; b) TODD's Instagram showing pictures of firearms and controlled substances (marijuana related products and prescription pills); c)

Instagram conversations between TODD and KENNARD; d) Coordinating travel for couriers; e) KENNARD's previous criminal history; and f) [the 6766 Phone] contacting suspected co-conspirators, TODD, GARCIA, CAMPBELL and SMITH.

*Id.* at PageID.2259–60. Thus, SA Zirkle "believe[d] there is probable cause to place a GPS ping on the [6766 Phone] and … [that] it will lead to further evidence related to KENNARD's drug trafficking activities." *Id.*

## B. Search Warrant for the Trowbridge Street residence.

On February 1, 2022, Judge Kimberly G. Altman granted an application for a search warrant. ECF No. 391, PageID.2302. The search warrant authorized the executing officer to search the premises "located at 100 Trowbridge Street, Detroit, Michigan." *Id.* at PageID.2354. The search warrant was supported by a 52-page affidavit sworn to by Special Agent ("SA") Stacy Zirkle. *Id.* at PageID.2353. In the affidavit, SA Zirkle provided following background:

In January of 2021, TFG2

identified Leo TODD as a trafficker of controlled substances. TODD and his Drug Trafficking Organization (DTO), sometimes referred to as 'Team Cookies,' are responsible for the distribution of kilogram quantities of fentanyl, crystal methamphetamine, cocaine, and diverted prescription pills throughout the metropolitan Detroit, Michigan area. Investigators later learned that the DTO smuggles controlled substances primarily between Phoenix, Arizona and Detroit, Michigan utilizing couriers and checked luggage on commercial airlines. Investigation shows that the DTO distributes those illicit substances in various states, including Michigan, Kentucky, and Arizona. The main distribution

14

house and location of congregation for the DTO has been
identified as [the Griggs Street residence].

*Id.* at PageID.2310–11. In the affidavit, SA Zirkle attested to following
facts:

An "[o]pen databases check … indicated that KENNARD is
associated to the [Trowbridge Street residence]. A utility check of the
[Trowbridge Street residence] indicated active electrical service since
2017 and active gas service since 2018 in the name of Carrie KENNARD
of 1[xxxx] Northrop Street, Detroit, Michigan, the mother of Kyle
KENNARD." *Id.* at PageID.2318–19. Mr. Kennard had also been
observed at the Trowbridge Street residence multiple times throughout
the course of the investigation. *Id.* at PageID.2319.

On October 25, 2020, the Detroit DEA Task Force Group 7 ("TFG
7"), the airport interdiction group, received information from a CS on a
bag that was checked from Detroit, Michigan to Phoenix, Arizona. *Id.* at
PageID.2311. The suitcase had a "bag tag in the name of Kapri
OLDHAM." *Id.* at PageID.2312. After a controlled-substance-trained
canine indicated the presence of narcotics odor at the seam of the
suitcase, officers obtained a warrant by a State of Michigan Magistrate
Judge. *Id.*

Upon opening the suspected suitcase there were three
individual packages of suspected cocaine located. The total
weight of the suspected cocaine was 1,121 gross grams. Also
located in the suspected suitcase was an unknown amount of

15

US currency. On a later date, it was determined the amount
of the US currency was a total of $7,950.00.

*Id.*

"On October 26, 2020, TFG7 … received information that OLDHAM
was at the Detroit Metropolitan Airport inquiring about the location of
her 'lost' luggage." *Id.* "A TFG7 Investigator downstairs near baggage
was provided a baggage claim ticket from a female later identified as Taia
SMITH. The bag was returned and Investigators maintained
surveillance of Smith." *Id.* Later, investigators stopped, arrested, and
interviewed Ms. Smith. *Id.* at PageID.2312–13.

After being Mirandized, Ms. Smith agreed to talk to investigators
and stated that she was asked by Ms. Oldham to "ride to the airport with
her." *Id.* at PageID.2313. Ms. Oldham then asked Ms. Smith to pick up
the "lost" baggage. *Id.* When Ms. Smith returned to the car, Oldham had
left her, and "ordered a Lyft to give her a ride to Fairlane Mall in
Dearborn, Michigan." *Id.*

> During the interview of SMITH, Investigators requested
> SMITH call OLDHAM to have her turn herself in. During the
> phone call, OLDHAM told SMITH the DEA couldn't
> negatively affect her and refused to cooperate. OLDHAM
> ended the call. OLDHAM discussed this seizure and
> coordinated her response with KENNARD.

*Id.*

On February 8, 2021, the Detroit Metro Airport Police Department
Special Investigations Unit ("DTWPD SIU") "seized approximately 528

16

grams of Methamphetamine, 129 grams of cocaine, and 3,884 dosage units of suspected Oxycodone from Ramika BOAZE during an interdiction operation." *Id.* at PageID.2313. After Ms. Boaze was Mirandized, Ms. Boaze stated that "she was asked by a friend named 'Whopp Dog' to transport a suitcase to Detroit, Michigan." *Id.* at PageID.2314. While Ms. Boaze "could not provide a proper name for 'Whopp Dog,'" she described him "as a black male, mid 40's, approximately 6'3, 240lbs." *Id.* Ms. Boaze also provided a phone number for Whopp Dog: 775-508-6766. *Id.*

Ms. Boaze explained that Whopp Dog "paid for a one-way Delta airline ticket on February 8, 2021 from Phoenix to Detroit, Michigan" and paid her to take the suitcase. *Id.* Ms. Boaze explained that "her instructions were to order an Uber and take the suitcase to 10350 Woodward Avenue, Detroit, Michigan"—a Sunoco gas station. *Id.*

Ms. Boaze explained that she had messaged Whopp Dog on Snapchat prior to being questioned and that "she usually uses social media applications to communicate with 'Whopp Dog.'" *Id.* at PageID.2314–15. Investigators also provided a conversation between Whopp Dog and Ms. Boaze in which Ms. Boaze informs Whopp Dog that his "case has drugs in it" and that "security just said that I can get i[n] trouble!" *Id.* at PageID.2315.

The address of the Sunoco gas station is "a 3 minute/0.2 mile walk from the [Trowbridge Street residence]." *Id.* SA Zirkle attested that

investigators believed "that KENNARD provided this address to BOAZE as it would limit his travel and would prevent him from possibly getting stopped by law enforcement" and that "KENNARD planned to meet BOAZE at the Sunoco to get the suitcase from her and pay her for taking the trip with the suitcase of drugs from Phoenix to Detroit." *Id.* at PageID.2315–16.

Investigators "submitted an administrative subpoena to AT&T, which requested the subscriber information for [the 6766 Phone]." *Id.* at PageID.2316. The results of the subpoena "indicated the subscriber for that telephone number is Cateasha WELLS-Ivy." *Id.* "An open-source database check of the phone number indicated the users of the phone number as Cateasha WELLS-Ivy and Kyle KENNARD, both with an address of 1[xxxx] Northrup Street, Detroit. Michigan." *Id.* SA Zirkle stated that investigators "believe [the 6766 Phone] is utilized by KENNARD and paid for by WELLS-Ivy through her AT&T account, utilizing the address of KENNARD's mother and a previous address utilized by KENNARD." *Id.* SA Zirkle also attested that she believed "that KENNARD utilized WELLS-Ivy as a nominee to conceal his identity and utilized an alternate address to attempt to thwart law enforcement efforts in his possible identification." *Id.*

"Beginning on February 24, 2021, … a red Chrysler 300 bearing Illinois license plate BD37389 was observed at the [Griggs residence]." *Id.* "The vehicle … was rented to Kyle KENNARD of 1[xxxx] Northrop

18

Street." *Id.* After Mr. Kennard's arrival, "at least a dozen individuals arrived on foot and in a vehicle to the location where they remained at the residence for a short stay." *Id.* at PageID.2317. SA Zirkle attests that in her training and experience, "a high volume of foot and vehicle traffic in a short time, along with stays that would be considered short for just a few minutes, is indicative of drug trafficking activities." *Id.*

On March 2, 2021, a search warrant was executed at the Griggs residence. *Id.* at PageID.2311. During the execution of the warrant, "TFG2 discovered a drug processing / distribution table upon entry into the main living room and seized/ discovered multiple types of drugs including suspected cocaine (58.5 gross grams), oxycodone pills (13), fentanyl pills (19)." *Id.*

On March 3, 2021, "Investigators observed KENNARD arrive to the residence of Griggs Street in the same rented vehicle." *Id.* at PageID.2317. SA Zirkle attests that she "believe[d] KENNARD went to the residence to check things out and to assist in getting the location up and running again for drug trafficking activities." *Id.*

On March 4, 2021, TFG2 obtained information concerning from the Federal Bureau of Investigation ("FBI"). *Id.* The FBI informed TFG2 that "in July 2020 they had observed KENNARD at the [Trowbridge Street residence] meeting with an FBI target from Arizona who is involved in drug trafficking and money laundering activities." *Id.* The FBI had also observed Mr. Kennard "travelling to the Firekeepers Casino in Battle

Creek, Michigan on almost a daily basis during that short period of time." *Id.* Additionally, investigators observed pictures of casino chips from the Firekeepers Casino on Mr. Kennard's Instagram account. *Id.* at PageID.2318. SA Zirkle attests that in her training and experience, "drug traffickers and money launderers often utilize casinos to help in laundering US currency/profits gained from drug trafficking." *Id.* at PageID.2317.

On March 9, 2021, investigators "conducted surveillance of the [Trowbridge Street residence] and observed the red Chrysler 300 rented by KENNARD in the driveway of the residence." *Id.* at PageID.2318.

On March 10, 2021, investigators "observed KENNARD and another unknown black male exit the [Trowbridge Street residence] and depart in the Chrysler 300." *Id.* at PageID.2318–19.

Additionally, Mr. Kennard was observed driving different vehicles, several of which are rental vehicles. *Id.* at PageID.2319. SA Zirkle attests that in her training and experience, "individuals involved with drug trafficking activities commonly rent out vehicles to try and thwart law enforcement efforts to keep up with their location and activities." *Id.*

On April 15, 2021, a warrant was authorized for Leo Todd's Instagram account "Teamcookie 33." *Id.* "Upon review of the content of the" TEAMCOOKIE33 Instagram account, investigators "observed four videos," pertaining to the October 25, 2020 airport seizure "sent from the account of 'Whoppdog' sent on October 26, 2020." *Id.* SA Zirkle attests

20

that the Whoppdog account "was identified as the account of Kyle Allen KENNARD." *Id.* SA Zirkle also attests that the October 26, 2020 videos

> show a person (believed to be KENNARD) on three-way conversation monitoring the calls between a female identified as OLDHAM and the officers. The person (believed to be KENNARD), is video recording the conversations with another device, which is believed to be the device of TODD. The video shows the person (believed to be KENNARD) on three way, has their phone muted and is texting. The texts content shows outgoing texts of 'yep them pull up'; 'On u'. At one point the officer asks OLDHAM 'can you come talk to me at my office?' and the person texting, texts 'no'. As the conversation between the officer and OLDHAM continue the person texting, sends 'Looks like a set up'.

*Id.* at PageId.2319–20. SA Zirkle attests that she "believe[s] KENNARD wants OLDHAM to tell the officers that this 'Looks like a set up.'" *Id.* at PageID.2320. Subsequently, "the person texting sends 'wat chargers'." *Id.* SA Zirkle attests that she "believe[s] KENNARD is telling OLDHAM to ask what she is going to be charged with." *Id.* "In one of the videos, the officers identify the female on the phone as 'Kapri.'" *Id.*

On July 21, 2021, a warrant was authorized "for the Instagram of Kyle KENNARD, 'WhoppDog'." *Id.* "Upon review of the content from the WhoppDog Instagram account, "Investigators were able to locate the same videos that are referenced above from the Instagram account of TODD from the airport seizure on October 25, 2020." *Id.* Additionally, investigators "located several photographs of US currency, casino chips,

narcotics and firearms with KENNARD and others from the TODD DTO"

on the account." *Id.* SA Zirkle attests that after reviewing the content,
many of the pictures that contained these items appeared to
be within a common location. In what appeared to be the
living room of the location, were wood floors, with brown
suede like couches, tan colored paint on the walls, and several
fold out TV tables. In the kitchen area of the location is what
appears to be a grayish brown stone like laminate flooring
along with kitchen countertops that are a light tan color with
darker speckles, brown cabinets, gray and white tiled
backsplash, and a black and stainless-steel gas stove.

*Id.* at PageID.2321. SA Zirkle also provided three photographs. *Id.* at
PageID.2322. One of these "is believed to be a picture with KENNARD
in his living room of the [Trowbridge Street residence] which is consistent
with other pictures located within his Instagram account as indicated by
the wood floors, brown suede like sofa and the fold up TV table." *Id.* at
PageID.2321. Additionally, the individual in the photograph is seen
wearing "slides," which Mr. Kennard "also regularly wears." *Id.* The
photograph also includes US currency "banded and in Ziploc bags." *Id.*
SA Zirkle attests that "[t]his method of packaging US currency is
indicative of proceeds from drug trafficking." *Id.*

In the other two photograph, a hand is holding a white substance.
*Id.* at PageID.2322. SA Zirkle attests that

[t]he pictures on the right and bottom are dated July 1, 2020
and is believed to be KENNARD standing in the kitchen
holding a portion of what appears to be a portion of a kilogram
of cocaine in his hand. KENNARD is wearing Nike slides and
the kitchen floor appears to be the same grayish brown stone

laminate flooring that is seen on pictures throughout his
Instagram account.

*Id.* at PageID.2321.

Additionally, investigators "noticed in some of the videos with US
currency, narcotics and firearms, that an individual believed to be
KENNARD, would commonly show his leg while wearing his Nike slides
with a tether that was attached to his leg." *Id.* at PageID.2323. SA Zirkle
provided three photographs. *Id.* One of the photographs shows a table
filled with what appears to be money. *Id.* The second photograph shows
a foot with an ankle monitor. *Id.* The third photograph shows a table with
money, and two feet, one of which has an ankle monitor, wearing Nike
slippers. *Id.* SA Zirkle attests that these "pictures" show what she
"believe[s] [to be] a picture of the living room with KENNARD's legs and
a tether attached inside the [Trowbridge Street residence] with large
amounts of US currency sitting on the fold out television tables which are
commonly seen in photos and videos throughout KENNARD's Instagram
account." *Id.* After inquiry from investigators, the Michigan Department
of Corrections ("MDOC") indicated that Mr. Kennard "was on tether and
on house arrest from May 14, 2020 through August of 2020. The address
that was provided to MDOC was the [Trowbridge Street residence]." *Id.*
SA Zirkle attests that "[t]he videos were dated on Instagram during this
time period were dates that KENNARD was under house arrest." *Id.* at
PageID.2323–24.

SA Zirkle provided two additional photographs. *Id.* at PageID.2324. One of the pictures shows a table with money and two cell phones. *Id.* SA Zirkle attests that this picture

> is dated August 5, 2020 and is believed to be the living room of the [Trowbridge Street residence] as indicated by the wood floors, the foldup TV tables, and the paint color on the walls. The photo also shows two cell phones to the left of the US currency with a possible third phone used to take the photograph. Drug traffickers often utilize more than once cell phone to conduct drug trafficking activities.

*Id.* The other picture shows a large brick of a white substance and a plastic bag filled with what appear to be pills. *Id.* SA Zirkle attests that this picture

> is dated November 18, 2020 and indicates the picture was taken in Detroit. I believe that the counter is a kitchen counter located within the [Trowbridge Street residence]. The TODD DTO is known to traffic in bulk quantities of blue pills that are fentanyl pills which I believe is what is inside the plastic bag.

*Id.*

SA Zirkle provided two additional photographs. *Id.* at PageID.2325. The pictures show baggage tags from Spirit Airlines for a flight to Las Vegas. *Id.* The photographs were dated October 13, 2020, and were sent "from KENNARD's Instagram account to TODD's Instagram account." *Id.* SA Zirkle attests that

> It appears that the baggage tag was checked in by Cateasha WELLS-Ivy who is a nominee for and co-conspirator of the TODD DTO (sometimes referred to as Team Cookies). The

24

TODD DTO is known to commonly send "ghost" baggage
which means someone will purchase a ticket and check in a
piece of baggage without actually getting on the plane. The
baggage will then travel to its intended destination and
someone will pick it up from the baggage carousel. The TODD
DTO will then take a picture of the slip provided by the
airlines for baggage claim and send it to another person who
is waiting at the destination to recover the luggage. US
currency and narcotics are often packed and sent in a ghost
bag. This method is used to attempt to thwart law
enforcement efforts in identification in the event the baggage
is interdicted.

*Id.*

SA Zirkle provided two additional photographs. Id. at PageID.2326.

One of the pictures shows a table with two firearms. *Id.* Underneath the

table, a foot wearing a slipper can be seen. *Id.* SA Zirkle attests that the

photograph is

dated July 1, 2021 and shows a picture with a Draco firearm
and a handgun with an extended magazine. The picture
appears to be taken with in the living room of the [Trowbridge
Street residence] as indicated by the wood floors, the fold up
TV table, and what I believe to be KENNARD's foot wearing
the Nike slides.

*Id.* The other photograph shows a large plastic bag, filled with what

appear to be smaller bags filled with a green herb. *Id.* SA Zirkle attests

that the photograph is "dated July 8, 2021 and appears to be a bulk

quantity of suspected marijuana in the living room of the [Trowbridge

Street residence] as indicated by the wood floor and the brown suede like

sofa." *Id.* SA Zirkle also attests that "The TODD DTO has referred to

themselves as TEAM COOKIES; the word COOKIES is a reference to

marijuana and the TODD DTO is known to deal in bulk quantities of marijuana." *Id.*

SA Zirkle also attaches a portion of a conversation between Mr. Kennard's Instagram account and an account named "justmanny602" taking place on May 30, 2021 and May 31, 2021. *Id.* at PageID.2327–2339. The conversation discusses "Xanax" and "fetty," as well as their procurement, their price, and their color. *Id.* at PageID.2327–2339. SA Zirkle attests that in the conversation

> KENNARD is utilizing his Instagram account to negotiate the procurement of fentanyl pills. As stated multiple times, KENNARD is asking if they are 'Fetty', code word for fentanyl. Further in the conversation, KENNARD then states 'they want the fent.' In my belief, that is KENNARD stating to the person attempting to find the pills that KENNARD is looking for pills with fentanyl. I know in my training, experience and this investigation that fentanyl pills are being stamped in blue pills with 'M' '30'. During the conversation, references to the 'blues' are what I believe to be the fentanyl pills.

*Id.* at PageID.2330.

On September 20, 2021, GPS ping data and records from Delta Airlines indicated that Mr. Todd flew from Phoenix, Arizona, to Detroit. *Id.* at PageID.2331. Phone location data indicated that Corderalla Campbell drove from the Griggs Street residence to Detroit Metro Airport ("DTW"), picked Mr. Todd up from DTW, and drove him back to the Griggs Street residence. *Id.*

On September 21, 2021, at 3:51 a.m., Perise Smith and Ms. Campbell were observed leaving the Griggs Street residence. *Id.* at PageID.2332.

At 9:25 a.m., "Kentucky State Police Troopers conducted a traffic stop on a vehicle that was under surveillance by members of the DEA Lexington Resident Office (LRO)." *Id.*

> DEA Special Agents (SA) and Task Force Officers (TFO) arrived on scene of the traffic stop and conducted a roadside interview of the suspects. The driver was identified as Perise SMITH and the passenger was identified as Cordarella CAMPBELL. SAs and TFOs took custody of the evidence, to include 3 cell phones, suspected marijuana, and 7 bags of skittles that appeared to be packaged with fentanyl pills in the same manner from the August 25, 2021 seizure, that were located by Kentucky State Police during the course of their probable cause search of the vehicle.

*Id.* at PageID.2333. SA Zirkle attests that based on her training and experience throughout the investigation, she

> believe[s] that on September 20, 2021, TODD left the Glendale residence in Arizona after having packaged narcotics and packing them in his checked baggage. TODD traveled back to Detroit with the checked baggage where co-conspirator CAMPBELL picked up TODD from the airport to transport him and the checked baggage to the stash house. I then believe that TODD and co-conspirators CAMPBELL and SMITH prepared the narcotics to take to Kentucky for distribution upon TODD's arrival back to Detroit where CAMPBELL and SMITH departed to Kentucky thereafter.

*Id.* at PageID.2334. Thus, "the TODD DTO reaches into the State of Kentucky." *Id.*

On October 7, 2021, a warrant was authorized for 30-days of GPS location monitoring of the 6766 Phone—"known to be utilized by Kyle Kennard." *Id.* at PageID.2334–35. SA Zirkle provides times and locations of the GPS location of the 6766 Phone from October 8, 2021 through October 11, 2011. *Id.* at PageID.2335–38. The location data reflects that the 6766 Phone was located at 35 Harmon Street, Detroit multiple times. *Id.* at PageID.2335–38. The 35 Harmon Street, Detroit location has an accuracy of 3815 feet and is within 3815 feet of the Trowbridge Street residence. *Id.* at PageID.2338. The location data reflects that the 6766 Phone was located at John C. Lodge Freeway, Detroit multiple times. *Id.* at PageID.2335–38. The John C. Lodge Freeway, Detroit location has an accuracy of 1597 feet and is within 1597 feet of the Motor City Casino. *Id.* at PageID.2338. The location data reflects that the 6766 Phone was located at 1672 Howard Street, Detroit multiple times. *Id.* at PageID.2335–38. The 1672 Howard Street, Detroit location has an accuracy of 1.06 miles and is within 1.06 miles of the MGM Casino. *Id.* at PageID.2338. The location data reflects that the 6766 Phone was located at 10198 Santa Clara Street, Detroit one time. *Id.* at PageID.2335–38. The 10198 Santa Clara Street, Detroit location has an accuracy of 5091 feet and is within 5091 feet of the Griggs Street residence, "the known stash location for the TODD DTO." *Id.* at PageID.2338.

Thus, SA Zirkle attested that "the GPS location of KENNARD indicated he travelled mainly between three locations: the Motor City Casino, the MGM Casino, and the [Trowbridge Street residence] with one other stop at the known stash location of [Griggs Street residence]." *Id.* at PageID.2339. SA Zirkle attested that in her training and experience, she

> believe[s] that KENNARD's residence is the [Trowbridge Street residence] based on this investigation, including the time he spent there throughout the daytime and night time as indicated in the timelines above. I also believe that KENNARD spends significant time at the Motor City and MGM Casinos to attempt to launder/conceal narcotics proceeds that have been produced by members of the TODD DTO.

*Id.* SA Zirkle also included two pictures "from KENNARD's Instagram believed to have been taken within the casino." *Id.*

On October 30, 2021, GPS ping data indicated that Mr. Kennard had left Detroit and travelled to Louisville, Kentucky. *Id.* at PageID.2340. On October 31, 2021 GPS ping data indicated that Mr. Kennard travelled from Louisville, Kentucky to Lexington, Kentucky. *Id.* "GPS pings indicated that KENNARD travelled between Lexington and Louisville on a daily basis from October 30 through November 4, 2021." *Id.*

"On November 3, 2021, DEA Louisville Investigators were provided KENNARD's vehicle information, KENNARD's description and photo,

and GPS pings." *Id.* DEA Louisville conducted surveillance of Mr. Kennard's activities in Louisiana and observed him utilizing an apartment that was rented by an individual who is associated with Darius Murff, "a known co-conspirator of the TODD DTO." *Id.* at PageID.2340–41.

On November 4, 2021, GPS ping data indicated that Mr. Kennard had left Louisville, Kentucky and travelled to the area of the Trowbridge Street residence. *Id.* at PageID.2341. Within 15 minutes, GPS ping data then indicated that Mr. Kennard was in the area of the Motorcity Casino. *Id.* SA Zirkle attests that based on her training and experience and knowledge of this investigation, she is

> aware that the TODD DTO is involved in the narcotics trafficking between Detroit and Kentucky. I believe it likely that KENNARD transported narcotics to Kentucky and made a drop off of narcotics to different Kentucky distributors along with assistance from co-conspirator MURFF. I also believe that KENNARD then made money pickups from the distributors before returning to Detroit and going to a casino to launder/spend the drug proceeds.

*Id.*

On January 11, 2021, a warrant was authorized for 30-days of GPS location monitoring of the 6766 Phone. *Id.* SA Zirkle attests that

> Investigators are continuing to monitor the GPS pings of KENNARD's cell phone. The GPS pings are continuing to glean information concerning KENNARD's whereabouts which indicate that KENNARD is still regularly at the Motor City Casino and the [Trowbridge Street residence]. KENNARD has also been observed at the TODD DTO stash

house located on Griggs Street in Detroit, Michigan. This leads investigators to believe that KENNARD is continuing his illicit activities for the TODD DTO, and that non-narcotics evidence of the Subject Offenses will be found at the [Trowbridge Street residence].

*Id.* at PageID.2341–42.

Investigators also ran toll records for the 6766 Phone. *Id.* at PageID.2342–43. The toll records indicate that in various periods in 2021, the 6766 Phone contacted a phone number "believed to be utilized by co-conspirator Cordarella CAMPBELL" 29 times; a phone number "utilized by TODD DTO Cesar GARCIA" 113 times; a phone number "utilized by TODD DTO courier Angela WHITE" 67 times; a phone number "utilized by co-conspirator Perise SMITH" 16 times. *Id.* at PageID.2342–43. SA Zirkle attests that she "believe[s] that KENNARD is in contact with these individuals to coordinate the TODD DTO drug trafficking and money laundering activities as there is probable cause to believe that all those individuals have been involved with the TODD DTO's commission of the Subject Offenses." *Id.* at PageID.2343.

On December 17, 2021, investigators observed Mr. Kennard, Mr. Todd, Ms. Campbell, and other unidentified subjects, including two unidentified men who arrived with Mr. Kennard in a black Nissan Rogue, enter the Griggs Street residence. *Id.* at PageID.2343–44. Later, investigators observed Mr. Kennard and the two unidentified subjects with whom he arrived at the Griggs Street residence drive to the

Trowbridge Street residence in the Nissa Rogue and enter the residence, empty-handed. *Id.* at PageID.2344. Later, one of the unidentified subjects, the driver of the Nissan Rogue, left the Trowbridge Street residence. *Id.* Later, "a black Chevy Traverse bearing Michigan tag DBC5858" and registered to Cateasha Wells-Ivy, arrived at the Trowbridge Street residence. *Id.* Mr. Kennard was observed talking to the driver of the Chevy Traverse. *Id.* The Chevy Traverse was then observed leaving. *Id.* Later, the Chevy Traverse was then observed returning. *Id.* at PageID.2345. "A black female driver, believed by investigators to be WELLS-IVY, exited the Traverse with small handbag or purse and entered the residence." *Id.* Later, Kennard and the two unidentified men with whom he arrived left the Trowbridge Street residence left the Trowbridge Street residence and approach the Nissan Rogue. *Id.* One of the unidentified men put a large handbag in the rear passenger area of the Nissan Rogue. *Id.* The two unidentified men then left in the Nissan Rogue, while Mr. Kennard re-entered the Trowbridge Street residence. *Id.* Later, a woman, believed to be Ms. Wells-Ivy, and a man, believed to be Mr. Kennard, left the Trowbridge Street residence in the Chevy Traverse. *Id.*

SA Zirkle attested that based on her training, experience, and knowledge of this investigation, she

> believe[s] that a narcotics transaction occurred at the [Trowbridge Street residence] with the other unknown males

> (on December 17, 2021). When KENNARD and the unknown
> individuals arrived at the [Trowbridge Street residence] they
> were observed walking into the residence empty handed.
> When the unknown individuals departed, one of the males
> was observed carrying a large handbag which, based on my
> training, experience and this investigation, is consistent with
> a drug transaction.

*Id.* at PageID.2345–46.

SA Zirkle attests that "[t]his investigation has shown that Cesar GARCIA is a source of supply for the fentanyl pills being distributed by Leo TODD, Kyle KENNARD, Corderalla CAMPBELL, and other co-conspirators. The investigation has also shown that KENNARD has used a nominee, Cateasha WELLS-Ivy, to assist him in laundering his drug proceeds." *Id.* at PageID.2346. Additionally, SA Zirkle attests that "[t]he investigation has further shown that KENNARD and his coconspirators move their drug proceeds and pay for their drugs with bulk cash, transfers between bank accounts, and by using Zelle and Square Cash APP transfers." *Id.*

SA Zirkle next provided "examples of how money flowed to and from KENNARD." *Id.* at PageID.2347. The examples each show Kapri Oldham, Cateasha Wells-Ivy, or Corderalla Campbell deposit cash into their bank accounts and thereafter send funds to either Mr. Kennard or Mr. Garcia's accounts. *Id.* at PageID.2347–48.

SA Zirkle concluded the affidavit by stating that she "believe[d] that there is probable cause to believe that non-narcotics evidence of the

SUBJECT OFFENSES is in/at the [Trowbridge Street residence] (including financial and other documents in hard and electronic form." *Id.* at PageID.2349–50.

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put another way, there must be a "nexus" between the "place" to be searched and the "things" to be seized. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021).

In assessing the sufficiency of an affidavit supporting a warrant, the Court looks to the four corners of the warrant; information known to an officer but not conveyed to the warrant-issuing judge is irrelevant. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To encourage use of the warrant procedure, a magistrate judge's probable-cause determination is afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised his discretion. *Gates*, 462 U.S. at 236 (internal quotations omitted); *see also United States v. Baker*, 976

F.3d 636, 646 (6th Cir. 2020) (recognizing courts' obligations to give issuing judges the benefit of the doubt in "doubtful or marginal cases").

While affidavits supporting warrant applications are generally entitled to a "presumption of validity," a defendant may "challenge the veracity of a sworn statement used by police to procure a search warrant." *Franks v. Delaware*, 438 U.S. 154, 171, 155 (1978). However, "[a] defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

In order to overcome the presumption of validity, a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. Upon making such a showing, "the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 156. If, at such a hearing, the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

In other words,

> To be entitled to a Franks hearing, [the defendant] must 1) make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove that the false statement or material omission is necessary to the probable cause finding in the affidavit.

*Bateman*, 945 F.3d at 1008 (cleaned up).[1]

## III. DISCUSSION

Defendant moves to suppress all evidence produced as a result of the execution of the search warrant for the location of the 6766 Phone and of the execution of the search warrant for the Trowbridge Street residence. ECF Nos. 376, 377. We discuss each motion in turn.

---

[1] In his motions, Mr. Kennard requests "an evidentiary hearing." *See*, *e.g.*, ECF No. 376, PageID.2016. At the motion hearing held on December 1, 2025, Mr. Kennard withdrew his request for an evidentiary hearing. The Court interprets this as a withdrawal of his request for an evidentiary hearing on whether he can "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause," *Franks*, 438 U.S. at 155–56—rather than a complete withdrawal of his request for a *Franks* hearing. After all, a *Franks* hearing would be necessary for the Court to provide the relief he seeks: exclusion of the evidence. *Id.* at 156. In any case, because Mr. Kennard cannot make the substantial preliminary showing, the Court denies his request for a *Franks* hearing.

## A. Motion to Suppress Evidence Obtained as a Result of the Execution of the Search Warrant for Location of the 6766 Phone (ECF No. 376)

Mr. Kennard moves to suppress evidence obtained as a result of the execution of the search warrant for location of the 6766 Phone, arguing that the supporting affidavit "includes recklessly made false statements concluding that Mr. Kennard is the user of the Instagram account "WhoppDog" and that, once those false statements are excluded from the affidavit, the remaining "information provided within the search warrant affidavit is minimal and would not support a finding of probable cause for a search warrant for the location data for the AT&T cellular telephone." ECF No. 376, PageID.2018.

In his brief, Mr. Kennard chiefly argues that while SA Zirkle "asserts that the WhoppDog Instagram account is Kennard's Instagram account," she "never provides any evidence to support said conclusion." *Id.* "Without a link between Kennard and WhoppDog, the affiant's assertion was recklessly made." *Id.* at PageID.2019.

Additionally, Mr. Kennard argues that while the SA Zirkle attested that Ms. Boaze "claimed that she was in communication with WhoppDog" and that the number Boaze communicated with was the Target Cellular Device, "there is no indication of what the content of these communications were or when they occurred." *Id.* (citation omitted). Additionally, "[l]ater search warrant affidavits and further investigation revealed that Boaze was communicating with an individual through the

Snapchat phone application. Snapchat is an entirely different social media platform from Instagram. Additionally, one does not communicate through Snapchat by use of a telephone number." *Id.* Thus, "[a]t the time the search warrant affidavit was submitted there was no support for the claim that Boaze was communicating with the Target Cellular Device." *Id.* Accordingly, SA Zirkle's statements "regarding Boaze communicating with the Target Cellular Device is a knowing falsity. Such statement was recklessly made and improperly influenced the Magistrate Judge's decision in this matter." *Id.* at PageID.2020.

Next, Mr. Kennard argues that the proximity to Mr. Kennard's home of the gas station location that WhoppDog provided to Boaze to deliver the suitcase of drugs is "coincidental." *Id.*

> Lastly, Mr. Kennard argues that
>
> The four corners of the affidavit are absolutely silent as it pertains to identifying the user of the Whoppdog account. There are no pictures provided within the search warrant affidavit from Whoppdog with Mr. Kennard's face. There are no pictures in the search warrant affidavit showing illustrative features such as tattoos that belong to Mr. Kennard. There are no messages contained within the search warrant affidavit that show Whoppdog communicating with any of Mr. Kennard's close family members such as his mother, brother, father, or the mother of his child. There is simply no identifying information whatsoever contained within the search warrant affidavit that links Mr. Kennard to the Whoppdog account.

*Id.*

38

In his brief, Mr. Kennard argues that the "false statement" contained in the affidavit is the recurrent assertion by SA Zirkle that the Whoppdog Instagram account is connected to Mr. Kennard. Mr. Kennard appears to be arguing that this connection is supported by little to no evidence, and that accordingly, SA Zirkle's assertion that the Whoppdog Instagram account is connected to Mr. Kennard is recklessly made.

Considering all the facts contained in the affidavit, the Court rejects this argument.

In order to overcome the presumption of validity of an affidavit, the Mr. Kennard must make a "substantial preliminary showing that the affiant … with reckless disregard for the truth, included a false statement … in the affidavit." *Bateman*, 945 F.3d at 1008 (cleaned up). In order to establish the preliminary "falsity" showing, the Sixth Circuit "requires a defendant to point to *specific* false statements and then accompany his allegations with an offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (cleaned up). Next,

> [a] law enforcement officer's statement is only considered to be issued with reckless disregard for the truth if a defendant shows that the affiant subjectively entertained serious doubts as to the truth of his or her allegations. Allegations of an agent's negligence or innocent mistake are insufficient.

*Bateman*, 945 F.3d at 1008 (cleaned up). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *Id.*

Here, Mr. Kennard has not made the requisite showing. Mr. Kennard has not provided any evidence that any statement contained in SA Zirkle's affidavit is false. In the absence of such an offer of proof, the Court must reject Mr. Kennard's motion—there is simply no indication that SA Zirkle's statements associating the Whoppdog Instagram account with Mr. Kennard are false. Nor does Mr. Kennard provide any proof that SA Zirkle "entertained serious doubts as to the truth" of any statement. *Bateman*, 945 F.3d at 1008. Thus, this Court "may not consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *Id.*[2] During the in-person hearing, however, Mr. Kennard appeared to present a different argument. During the hearing, Mr. Kennard argued that SA Zirkle's statements that Mr. Kennard was associated with the Whoppdog Instagram account were not

---

[2] Mr. Kennard also argues that "the search warrant affidavit does not meet the probable cause threshold without the false statements that were made." ECF No. 376, PageID.2020. Specifically, Mr. Kennard argues that "[t]he other information provided is minimal and does not support a conclusion that Mr. Kennard is involved in illegal activity." *Id.* at PageID.2021. Given the Court's conclusion that Mr. Kennard has failed to make the requisite showing that SA Zirkle's affidavit contained any false information, the Court need not address the question of whether the affidavit establishes probable cause in the absence of any such purportedly false information. *See Bateman*, 945 F.3d at 1008. Nonetheless, the Court considers a similar argument advanced under a different theory below.

sufficiently justified,[3] and that once the baseless inferential leap (connecting Mr. Kennard with the Whoppdog Instagram account) was excluded, the affidavit lacked probable cause.

The Court rejects this argument. In the affidavit, SA Zirkle provides information sufficient for a reasonable person to conclude that Mr. Kennard is associated with the Whoppdog Instagram account. For instance, SA Zirkle attests that

- Ms. Boaze stated that the number assigned to the 6766 Phone was an individual operating under the name "Whopp Dog." *Id.* at PageID.2259.
- Mr. Kennard, indicated to the Las Vegas Metro Police Department that his contact number was the number assigned to the 6766 Phone. *Id.* at PageID.2258.
- An Instagram account operating under the name "Whoppdog" frequently communicated with the Instagram account operating under the name "teamcookie33", which was associated with Leo Todd. *Id.* at PageID.2244–46.
- The Whoppdog Instagram account communicated with the teamcookie33 Instagram account about illicit drugs such as fentanyl and cocaine, and drug trafficking logistics. *Id.* at PageID.2244-49.
- Mr. Kennard was observed, on multiple occasions, entering and leaving the Griggs Street residence—Leo Todd's "stash-house," *id.* at PageID.2234—at which officers had recovered drugs, drug processing paraphernalia, and substances suspected to be drugs, *id.* at PageID.2236. *See*, *e.g.*, *id.* at PageID.2241, PageID.2250-51.
- During one of the times Mr. Kennard was at the Griggs Street residence, he was there at the same time as other co-

---

[3] For instance, Mr. Kennard suggested that the "Whopp Dog" referenced by Ms. Boaze may not be operating the "Whoppdog" Instagram account.

conspirators, including Mr. Todd, Mr. Garcia, Mr. Monarrez, and Mr. Rodriguez. *Id.* at PageID.2254. On that occasion, Garcia, Monarrez, and Rodriguez left the residence with 1.335 kilograms of fentanyl pills and $31,320. *Id.* at PageID.2256–57.

These facts support SA Zirkle's inference that Mr. Kennard was associated with the Whoppdog Instagram account. In other words, these facts provide a sufficient basis for SA Zirkle's affidavit to connect information obtained from observing the Whoppdog Instagram account to Mr. Kennard.

However, even if the Court were to exclude any references to the Whoppdog Instagram account in the affidavit, the remainder of the affidavit clearly establishes "a fair probability that … evidence of a crime will be," *Gates*, 462 U.S. at 238, obtained by monitoring the location of the 6766 Phone for a period of thirty days. For instance, in the affidavit, SA Zirkle attests that

- After Ms. Boaze was stopped at the airport and found with 129 grams of cocaine, 528 grams of methamphetamine, and 3,884 morphine pills, she stated that she had been told by a number assigned to the 6766 Phone to deliver the bag to "1[xxxx] Woodward Avenue, Detroit, Michigan." ECF No. 388, PageID.2259.
- "1[xxxx] Woodward Avenue, Detroit, Michigan" is on the same block that Mr. Kennard lives on. *Id.*
- Toll records indicated that the 6766 Phone was in contact with multiple co-conspirators, including Mr. Todd, Mr. Garcia, Ms. Smith, Ms. Ivy-Wells, and Ms. Campbell. *Id.* at PageID.2257–58.
- TFG2 subpoenaed subscriber information for the 6766 Phone and observed that the subscriber of the 6766 Phone was Ms. Ivy-Wells, a co-conspirator. *Id.* at PageID.2258.

42

- Mr. Kennard, indicated to the Las Vegas Metro Police Department that his contact number was the number assigned to the 6766 Phone. *Id.*
- Mr. Kennard was observed, at multiple times, entering and leaving the Griggs Street residence, at which officers had recovered drugs, drug processing paraphernalia, and substances suspected to be drugs, *id.* at PageID.2236. *See, e.g.*, *id.* at PageID.2241, PageID.2250-51.
- During one of the times Mr. Kennard was at the Griggs Street residence, he was there at the same time as other co-conspirators, including Mr. Todd, Mr. Garcia, Mr. Monarrez, and Mr. Rodriguez. *Id.* at PageID.2254. Garcia, Monarrez, and Rodriguez left the residence with 1.335 kilograms of fentanyl pills and $31,320. *Id.* at PageID.2256–57.

Accordingly, even when excluding any references to the Whoppdog Instagram account, the affidavit contains sufficient information connecting the 6766 Phone with Mr. Kennard; sufficient information connecting Mr. Kennard with the drug-trafficking conspiracy; and sufficient information connecting the 6766 Phone itself with the drug-trafficking conspiracy. Thus, even when excluding any references to the Whoppdog Instagram account, there is a fair probability[4] that evidence

---

[4] Mr. Kennard takes issue with any inferences that Mr. Kennard's presence at the Griggs Street residence proves his participation with the charged drug conspiracy. However, an affidavit must merely establish "a *fair probability* that … evidence of a crime will be" found at the place to be searched. *Gates*, 462 U.S. at 238 (emphasis added). While alternative theories for Mr. Kennard's presence at the Grigg's Street residence may be plausible—Mr. Kennard argues that he is Mr. Todd's childhood friend—such plausible alternatives do not overcome the fact that this affidavit establishes such a fair probability.

of a crime will be obtained by monitoring the location of the 6766 Phone for a period of thirty days. *See Gates*, 462 U.S. at 238.

To summarize: (1) Mr. Kennard has not made the requisite showing that the affidavit includes any false statement, so there are no grounds to support a *Franks* hearing; (2) the affidavit contains facts setting out a sufficient evidentiary basis to associate the Whoppdog Instagram account with Mr. Kennard; and, (3) even if references to the Whoppdog Instagram account were excised from the affidavit, the remaining facts create sufficient probable cause for a search of the location data of the 6766 Phone.

For the aforementioned reasons, Mr. Kennard's Motion to Suppress the Cell Phone Location Data (ECF No. 376) is **DENIED**.

## B. Motion to Suppress Evidence Obtained as a Result of the Execution of the Search Warrant for the Trowbridge Street residence (ECF No. 377).

Mr. Kennard also moves to suppress evidence obtained as a result of the execution of the search warrant of the Trowbridge Street residence. ECF No. 377. Specifically, Mr. Kennard argues (1) that the "search warrant affidavit contains false statements that were made with a reckless disregard for the truth"; (2) that "the search warrant affidavit contains cellphone GPS ping information that was obtained by using false statements that were made with a reckless disregard for the truth"; and (3) that "the search warrant affidavit fails to provide a nexus

between 100 Trowbridge street and criminal activity." *Id.* at PageID.2073–81. We address these arguments in turn.

      1. *Whether the Search Warrant Affidavit Contains a False Statement Made with a Reckless Disregard for the Truth as to the identity of the Whoppdog Instagram Account.*

Mr. Kennard argues that in the affidavit, SA Zirkle "included information received from an earlier search warrant executed on the Instagram account WhoppDog. Throughout the affidavit, the affiant asserts that Mr. Kennard is the user of the WhoppDog account but never provides any evidence to support said conclusion." *Id.* at PageID.2073.

Specifically, Mr. Kennard argues that SA Zirkle's statement that "Investigators submitted an administrative subpoena to AT&T, which requested the subscriber information for 775-508-6766, believed to be utilized by 'Whopp Dog,'" ECF No. 391, PageID.2316, is "misleading on multiple fronts" because "[t]he affiant is well aware that Instagram accounts are not associated with phone numbers. Yes, an Instagram account can be used on one's cellular phone, but the accounts are maintained and activated by an email address." ECF No. 377, PageID.2073–74.

Next, Mr. Kennard argues that SA Zirkle's statements that the Snapchat conversation observed at the Detroit Metropolitan Airport was between Ms. Boaze and Mr. Kennard, ECF No. 391, PageID.2315, is not substantiated. ECF No. 377, PageID.2074. Mr. Kennard argues that "[t]here has been no information provided within the search warrant

affidavit demonstrating that Mr. Kennard even has a Snapchat account." *Id.*

Next, Mr. Kennard argues that SA Zirkle's substitution of Mr. Kennard for Whoppdog when discussing the "four videos sent through Instagram between Teamcookies33 and WhoppDog" is done "without any supporting evidence whatsoever. There is nothing within that conversation that can be attributed to Mr. Kennard." *Id.*

Mr. Kennard argues SA Zirkle's identification of Mr. Kennard as Whoppdog "by describing the background in pictures from the account" is not sufficient because "the affiant never connects the background of those pictures to anything of Mr. Kennard's." *Id.* at PageID.2075.

Next, Mr. Kennard argues that SA Zirkle's identification of Mr. Kennard based on pictures on the Whoppdog Instagram account is baseless. *Id.* Mr. Kennard argues that "[t]here are absolutely no identifying features in those pictures yet the affiant states." *Id.*

Lastly, Mr. Kennard argues that

This same lack of a method of identification is used repeatedly throughout the affidavit. There are pictures of guns and narcotics throughout the WhoppDog Instagram account and the affiant continues to state this is Kennard without providing any evidence to support the claim. There is a conversation between WhoppDog and a drug supplier and once again the affiant substitutes WhoppDog for Kennard without any supporting evidence.

*Id.* at PageID.2076.

Mr. Kennard concludes by arguing that

[t]he affiant cannot simply state over and over that Kennard is the user of the account without providing evidence to support the claim. Without such evidence, the repeated assertion that Mr. Kennard is the user of the WhoppDog account is clearly being intentionally made with a reckless disregard for the truth.

*Id.*

After careful review of the affidavit, the Court must reject Mr. Kennard's arguments.

In order to overcome the presumption of validity of an affidavit, the Mr. Kennard must make a "substantial preliminary showing that the affiant … with reckless disregard for the truth, included a false statement … in the affidavit." *Bateman*, 945 F.3d at 1008 (cleaned up). In order to establish the preliminary "falsity" showing, the Sixth Circuit "requires a defendant to point to *specific* false statements and then accompany his allegations with an offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (cleaned up). Next,

[a] law enforcement officer's statement is only considered to be issued with reckless disregard for the truth if a defendant shows that the affiant subjectively entertained serious doubts as to the truth of his or her allegations. Allegations of an agent's negligence or innocent mistake are insufficient.

*Bateman*, 945 F.3d at 1008 (cleaned up). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *Id.*

Here, as discussed above regarding the affidavit for the cell phone location information, Mr. Kennard has not made the requisite showing. Mr. Kennard has not provided any evidence that any statement contained in SA Zirkle's affidavit is false. In the absence of such an offer of proof, the Court must reject Mr. Kennard's motion—there is simply no indication that SA Zirkle's statements associating the Whoppdog Instagram account with Mr. Kennard is false. Nor does Mr. Kennard provide any proof that SA Zirkle "entertained serious doubts as to the truth" of any statement. *Bateman*, 945 F.3d at 1008. Thus, this Court "may not consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *Id.*

However, even when construing Mr. Kennard as arguing that the affidavit lacks probable cause because it does not provide sufficient facts connecting Mr. Kennard to the Instagram account Whoppdog, the Court rejects this argument. SA Zirkle provides sufficient information connecting Mr. Kennard to the Instagram account Whoppdog. For instance, in the affidavit, SA Zirkle attests that

- After Ms. Boaze was stopped at the airport and found with "528 grams of Methamphetamine, 129 grams of cocaine, and 3,884 dosage units of suspected Oxycodone," Ms. Boaze stated that "she was asked by a friend named 'Whopp Dog' to transport a suitcase to Detroit, Michigan." ECF No. 391, PageID.2329. Ms. Boaze provided following number for Whopp Dog: 775-508-6766. *Id.*
- After investigators subpoenaed the subscriber information for the 6766 Phone, they observed that the subscriber for that

telephone number was Cateasha Wells-Ivy." *Id.* at PageID.2316. "An open-source database check of the phone number" also indicated that Mr. Kennard was a user of the phone number. *Id.* The address listed on the open-source database was associated with Mr. Kennard's mother. *Id.*

- SA Zirkle compared physical attributes of an individual frequently seen in photographs posted on the Whoppdog Instagram account and attested that they matched Mr. Kennard's attributes. *See, e.g., id.* at PageID.2323. For instance, a tether was seen on the ankle of the individual in the photographs at a time during which Mr. Kennard was wearing an ankle tether. *Id.* Additionally, Mr. Kennard regularly wears the type of shoes frequently featured in the photographs. *Id.* at PageID.2321.

- The Whoppdog Instagram account features pictures of locations that Mr. Kennard is known to frequent, such as the Firekeepers Casino. *Id.* at PageID.2317–18.

Accordingly, the affidavit contains sufficient information to allow a reader of the affidavit to conclude that the Whoppdog Instagram account is associated with Mr. Kennard. Thus, it is reasonable for the affidavit to refer to the Whoppdog Instagram account as Mr. Kennard's Instagram account.

Thus, the Court rejects Mr. Kennard's argument that the affidavit supporting the search warrant contains false information made with a reckless disregard for the truth as to the identity of the Whoppdog Instagram account. Additionally, the Court finds that the affidavit contains sufficient information connecting the Whoppdog Instagram account to Mr. Kennard.

49

2. *Whether the Information Obtained as a Result of the Execution of the October 7, 2021 Warrant Should be Excluded from the Affidavit Supporting the Search Warrant for the Search of the Trowbridge Street Residence*

Mr. Kennard argues that because the affidavit supporting the search warrant for location of the 6766 Phone, dated October 7, 2021, contains false statements asserting that Mr. Kennard is the user of the Whoppdog Instagram account, information obtained as a result of the execution of that search warrant should be excluded from the affidavit supporting the search warrant for a search of the Trowbridge Street residence as a result of the application of the exclusionary rule. ECF No. 377, PageID.2076–77.

But, as discussed above, the Court has already rejected Mr. Kennard's argument that the information obtained as a result of the execution of the search warrant for location of the 6766 Phone, dated October 7, 2021, should be suppressed. Accordingly, information obtained as a result of the execution of that search warrant need not be excluded from the affidavit in support of the search warrant for the search of the Trowbridge Street residence.

Mr. Kennard argues, in the alternative, that "the GPS ping information … would … not support a finding of probable cause." *Id.* Specifically, Mr. Kennard argues that his purported presence at the Griggs Street residence, his purported travels to multiple casinos, and

50

his travels to Kentucky "is not indicative of narcotics transactions." *Id.* at PageID.2077–79.

While it is true that visiting the home of a childhood friend who is a drug trafficker, driving to Kentucky, and visiting casinos are not inherently suspicious activities in and of themselves, when reviewing "all the circumstances set forth in the affidavit," *Gates*, 462 U.S. at 238, it is clear that "there is a fair probability that contraband or evidence of a crime will be found in," *id.*, the Trowbridge Street residence. For instance,

- Utility service at the Trowbridge Street residence is in the name of Mr. Kennard's mother. *Id.* at PageID.2318–19. Mr. Kennard was observed at the Trowbridge Street residence multiple times. ECF No. 391 at PageID.2319.
- Ms. Boaze informed officers that she was receiving instructions from a phone number connected to Mr. Kennard—the 6766 Phone—and an individual with a moniker associated with Mr. Kennard—Whopp Dog—on where to bring a suitcase "carrying approximately 528 grams of Methamphetamine, 129 grams of cocaine, and 3,884 dosage units of suspected Oxycodone" from the airport. *Id.* at PageID.2313. Ms. Boaze also informed officers that Whopp Dog had "paid for a one-way Delta airline ticket on February 8, 2021 from Phoenix to Detroit, Michigan" and paid her to take the suitcase. *Id.*
- Mr. Kennard was observed to be present at the Griggs Street residence during circumstances "indicative of drug trafficking activities." *Id.* at PageID.2317.
- An execution of a search warrant at the Griggs Street residence led to the seizure and discovery of drug-processing paraphernalia and illicit drugs. *Id.* at PageID.2311. The day after the execution of the search warrant, Mr. Kennard went to the Griggs Street residence under circumstances where it

reasonably appeared to the affiant that he "went to the residence to check things out and to assist in getting the location up and running again for drug trafficking activities." *Id.* at PageID.2317.

- Mr. Kennard was observed at the Trowbridge Street residence with an FBI target from Arizona who is involved in drug trafficking and money laundering activities." *Id.*

- Mr. Kennard frequented casinos. *Id.* at PageID.2317–18. Casinos are frequently used by those involved in drug trafficking to launder money. *Id.*

- An Instagram account associated with Mr. Kennard, the Whopp Dog Instagram account, provided instructions to individuals being interviewed by the authorities concerning a suitcase found at the airport with 1,121 grams of cocaine and cash. *Id.* at PageId.2319–20.

- An Instagram account associated with Mr. Kennard, the Whopp Dog Instagram account, contained pictures of weapons, cash, and illicit drugs. *Id.* at PageID.2321–24, PageID.2326. The pictures were believed to have been taken at the Trowbridge Street residence. *Id.*

- An Instagram account associated with Mr. Kennard, the Whopp Dog Instagram account, contained communications that appeared to be negotiating the procurement of fentanyl. *Id.* at PageID.2330.

- GPS ping data indicated that Mr. Kennard frequented the Griggs Street residence (where drugs were recovered after search warrant), the Trowbridge Street residence, and multiple casinos. *Id.* at PageID.2335–39.

- GPS ping data indicated that Mr. Kennard travelled to Kentucky, a location in which the charged drug trafficking conspiracy operated. *Id.* at PageID.2340. In Kentucky, Mr. Kennard utilized an apartment that was rented by an individual who is associated with a known co-conspirator of the charged drug trafficking conspiracy. *Id.* at PageID.2340–41.

- GPS ping data indicated that, after returning from Kentucky, Mr. Kennard immediately drove to the Trowbridge Street residence, and then a casino. *Id.* at PageID.2341.

- Mr. Kennard and multiple other individuals were observed entering and leaving the Trowbridge Street residence in a manner indicating that they had engaged in a narcotics transaction. *Id.* at PageID.2345–46. For instance, an individual was observed arriving empty-handed and leaving with a large handbag. *Id.*
- Financial records indicated that members of the charged conspiracy frequently deposited cash into their bank accounts and thereafter send funds to Mr. Kennard. *Id.* at PageID.2347–48.

The facts set forth above are sufficient to establish "a fair probability that contraband or evidence of a crime will be found in" the Trowbridge Street residence. *Gates*, 462 U.S. at 238.

Thus, the Court rejects Mr. Kennard's argument that the affidavit supporting the search warrant contains information that should be excluded. Additionally, the Court finds that the affidavit contains sufficient information for a finding of probable cause that evidence of a crime will be found at the Trowbridge Street residence.

3. *Whether the Affidavit Supporting the Search Warrant for the Trowbridge Street Residence Fails to Provide a Nexus Between the Trowbridge Street Residence and Criminal Activity*

Mr. Kennard argues that "[t]he search warrant affidavit is silent regarding a nexus between Trowbridge and illegal activity." ECF No. 377, PageID.2079.

In support, Mr. Kennard cites to *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), and *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005). *Id.* at PageID.2079-81.

In *Brown*, the Sixth Circuit found that the affidavit failed to establish a proper nexus to search the home of a suspected drug dealer, when "the search warrant affidavit contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." *Brown*, 828 F.3d at 382. The Sixth Circuit explicitly rejected the notion that an individual's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." Id. at 383. Instead, the Sixth Circuit reaffirmed its holding in *Frazier* and "required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.*

Here, contrary to Mr. Kennard's argument, the information contained in SA Zirkle's affidavit plainly "show[] that the residence had been used in drug trafficking." *Id.* For instance, SA Zirkle attests that

- Ms. Boaze informed officers that she was instructed to deliver a suitcase containing illicit drugs and cash to a contact believed to be Mr. Kennard to a gas station 0.2 miles away from the Trowbridge Street residence. *Id.* at PageID.2315.
- The FBI had observed Mr. Kennard "meeting with an FBI target from Arizona who is involved in drug trafficking and money laundering activities" at the Trowbridge Street residence. *Id.* at PageID.2317.
- Photographs and videos obtained from the Whoppdog Instagram account showed illicit drugs, weapons, and cash at a location which SA Zirkle attested was believed to be the

Trowbridge Street residence. *See*, *e.g.*, *id.* at PageID.2322–24. SA Zirkle does not substantiate this belief.

- After Mr. Kennard returned from Kentucky, he immediately drove to the Trowbridge Street residence. *Id.* at PageID.2341.
- Mr. Kennard and multiple other individuals were observed entering and leaving the Trowbridge Street residence in a manner indicating that they had engaged in a narcotics transaction. *Id.* at PageID.2345–46. For instance, an individual was observed arriving empty-handed and leaving with a large handbag. *Id.*

This information, combined with other statements in the affidavit connecting Mr. Kennard to drug-trafficking activity, is enough to establish a nexus between the illegal activity and the Trowbridge Street residence so as to support a search of that location for evidence of drug trafficking.

Accordingly, Mr. Kennard's argument that the affidavit supporting the search warrant for the Trowbridge Street residence fails to provide a nexus between the Trowbridge Street residence and criminal activity is rejected.

For the aforementioned reasons, Mr. Kennard's Motion to Suppress (ECF No. 377) is **DENIED**.

55

## IV.  CONCLUSION

For the reasons explained above, Defendant Kennard's motions to suppress (ECF Nos. 376, 377) are hereby **DENIED**.

**SO ORDERED.**

Dated: December 23, 2025      s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE